**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sonya Nellie Tyler,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>　　　　　Defendant. | No. CV-23-02073-PHX-DLR<br><br>**ORDER** |

　　　　On June 21, 2006, Claimant Sonya Nellie Tyler filed concurrent applications for Social Security Disability Insurance ("SSDI") and Supplemental Security Income benefits, alleging disability beginning April 5, 2006. (Administrative Record ("AR.") 325–29.) On November 28, 2006, she was approved for SSDI benefits as of April 5, 2006 and Supplemental Security Income benefits as of June 1, 2006. (AR. 88–89.) In December 2019, the Social Security Administration ("Agency") issued a notice to Tyler that it found her disability was continuing. (AR. 143, 427–33.) The Agency later found Tyler's disability ceased on January 10, 2020, so it terminated her benefits as of March 31, 2020. (AR. 148–50.) Tyler requested reconsideration. (AR. 157–58.) An Agency Disability Hearing Officer held a hearing, after which she upheld the cessation determination. (AR. 180.)

　　　　Tyler timely requested a hearing in front of an Administrative Law Judge ("ALJ"). (AR. 191–214.) After the hearing, the ALJ issued an unfavorable decision, and Tyler timely appealed. (AR. 90–108, 261.) The Appeals Council remanded the case to the ALJ. (AR.

109–15.) The ALJ held another hearing and again issued an unfavorable decision. (AR. 22–42, 116–41.) The decision used the initial disability determination issued on November 28, 2006 as the Comparison Point Decision ("CPD") for the purpose of determining medical improvement. (AR. 121.) Tyler timely requested review of the decision, and the Appeals Council granted the request. (AR. 316–23.) An Administrative Appeals Judge later issued a partially favorable decision, finding that Tyler's period of disability had ceased as of January 10, 2020 but recommenced on November 4, 2022 when she turned fifty-five. (AR. 1–14.) The Administrative Appeals Judge affirmed the ALJ's findings and conclusions for the period prior to November 4, 2022. (AR. 8.) Tyler seeks judicial review of the ALJ's decision to the extent it was affirmed by the Administrative Appeals Judge pursuant to 42 U.S.C. § 405(g). For the following reasons, the Court affirms.

## I.   The ALJ's Eight-Step Process

The ALJ uses an eight-step evaluation process to determine whether a claimant continues to be disabled. At step one, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1594(f)(1). If so, the claimant is no longer disabled. *Id.* If not, the ALJ proceeds to step two of the evaluation. *Id.* § 404.1594(f)(2).

At step two, then ALJ determines if the claimant has an impairment or a combination of impairments that meet or medically equal the severity of an impairment enumerated in the regulations. *Id.* If so, the claimant is disabled. If not, the ALJ proceeds to step three, where he determines if there has been medical improvement shown by a decrease in medical severity. *Id.* If so, the ALJ proceeds to step four. *Id.* If not, the ALJ skips to step five. *Id.*

At step four, the ALJ determines if the medical improvement relates to the claimant's ability to do work such that it would increase the claimant's residual functioning capacity ("RFC"). *Id.* § 404.1594(f)(4). If so, the ALJ skips to step six. *Id.* If not, the ALJ proceeds to step five. *Id.*

At step five, the ALJ determines whether any exceptions to 20 C.F.R. §§ 404.1594(d) and (e) apply. *Id.* § 404.1594(f)(5). If no exceptions apply, the claimant is still

1 disabled. *Id.* If an exception in § 404.1594(e) applies, the claimant is no longer disabled. *Id.* If an exception in § 404.1594(d) applies, the ALJ proceeds to step six. *Id.*

At step six, the ALJ determines whether the combination of all the claimant's impairments is severe. *Id.* If not, the claimant is no longer disabled. *Id.* If so, the ALJ moves to step seven, where he assesses the claimant's RFC and determines whether the plaintiff can perform past work. *Id.* § 404.1594(f)(7). If so, the claimant is no longer disabled. *Id.* If not, the ALJ moves to step eight. *Id.* § 404.1594(f)(8).

At step eight, the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and past work experience. *Id.* If so, the claimant is no longer disabled. *Id.* If not, the claimant remains disabled. *Id.*

## II.    Legal Standard

This Court reviews only those issued raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). An ALJ's factual findings are "conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (quotation and citation omitted). Substantial evidence is "more than a mere scintilla" and "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1154 (quotations and citations omitted). The substantial evidence standard is a "highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). Still, this Court cannot affirm the ALJ's decision based on grounds on which the ALJ did not rely. *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

The harmless error doctrine applies to the Court's review of an ALJ's decision. Thus, the decision "need not be remanded or reversed if it is clear from the record that the error is 'inconsequential to the ultimate nondisability determination.'" *Jones v. Comm'r of Soc. Sec. Admin.*, 460 F. Supp. 3d 867, 871 (D. Ariz. 2020) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)).

**III.  Analysis**

Tyler raises two issues for the Court's consideration: (1) whether the ALJ's finding of medical improvement supported by substantial evidence, and (2) whether the ALJ's RFC finding is supported by substantial evidence. The Court addresses both issues in turn.

    **a.  Medical Improvement**

Tyler challenges the ALJ's determination that she experienced medical improvement in January 2020. (Doc. 13 at 10.) A recipient of disability benefits is no longer entitled to benefits if the Commissioner determines there is substantial evidence supporting a finding that "there has been a medical improvement in the individual's impairment or combination of impairments," and "the individual is now able to engage in substantial gainful activity[.]" 42 U.S.C. § 423(f)(1). "Medical improvement is any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that the claimant was disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1).

To determine whether there has been medical improvement, the ALJ "must 'compare the current medical severity' of the claimant's impairment to the medical severity of the impairment 'at the time the most recent favorable medical decision that [the claimant] w[as] disabled or continued to be disabled.'" *Attmore v. Colvin*, 827 F.3d 872, 873 (9th Cir. 2016) (quoting 20 C.F.R. § 404.1594(b)(7)). "[T]he relevant baseline normally is the medical evidence underlying the ALJ's most recent disability determination." *Id.* "A determination that there has been a decrease in medical severity must be based on improvement in the symptoms, signs, and/or laboratory findings associated with [the claimant's] impairment[s]." 20 C.F.R. § 404.1594(b)(1).

Here, the ALJ identified the November 2006 determination, which is the first favorable medical decision that Tyler was disabled. (AR. 121.) The November 2006 CPD lists Tyler's primary impairments as "other and unspecified arthopathies" and her secondary impairments as "obesity and other hyperalimentation." (AR. 89.) The ALJ identified the following as Tyler's medically determinable impairments at the time of the

CPD: "obesity, carpal tunnel syndrome, and abdominal wound." (AR. 121.) Tyler contends that the ALJ did not consider all of Tyler's alleged impairments at the time of the CPD, including low back pain, bilateral carpal tunnel syndrome, peripheral neuropathy of the legs, and fibromyalgia. (Doc. 13 at 13.)

The ALJ properly accounted for all Tyler's impairments. He considered and referenced the medical evidence *underlying* the CPD, including medical opinions from Robert Estes, M.D. and Robert Palmer, M.D. Dr. Estes noted Tyler's primary diagnosis as "extreme obesity," her secondary diagnosis as "cellulitis abdominal wound," and noted fibromyalgia, carpal tunnel syndrome, and neuropathy. (AR. 797.) Dr. Palmer noted Tyler's allegations of low back pain, bilateral carpal tunnel syndrome, peripheral neuropathy of the legals, fibromyalgia, and a staph abdominal wound. (AR. 770.)

Further, the ALJ compared Tyler's body mass index ("BMI") at the time of the CPD (which was 50.5) to records of her BMI from 2019 through 2022 (which has consistently been around 40). (AR. 125 (citing AR. 773, 814, 952, 1439, 1504, 1795, 1921, 2179).) He also compared the severity of Tyler's carpal tunnel syndrome between 2006 and 2020. He referenced a nerve conduction study and electromyogram and treatment records from the time of the CPD, noted that Tyler does not receive ongoing treatment for carpal tunnel syndrome now, and pointed out that Tyler no longer wears wrist splints like she did at the time of the CPD. (AR. 126 (citing AR. 759, 186).) Finally, he discussed Tyler's abdominal staph infection, noting her symptoms at the time of the CPD and finding that the wound healed and infection was treated. (AR. 126 (citing AR. 501–02, 504, 677–78, 771, 773).)

All the ALJ's findings were supported by substantial evidence in the record, to which he cited throughout his analysis. He used objective medical evidence, including laboratory findings and reports of symptoms, to find a decrease in medical severity. The analysis is not undermined by the mere fact that he did not list the impairments exactly as Tyler would have preferred. Substantial evidence supports the ALJ's finding of medical improvement.

### b. RFC Finding

Tyler then generally objects to the ALJ's RFC finding. (Doc. 13 at 24; AR. 126.) "[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC," *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015), and "will assess [the RFC] based on all of the relevant medical and other evidence," 20 C.F.R. § 404.1545(a)(3).

Specifically, Tyler seems to challenge the ALJ's evaluation of her symptom testimony. Proper evaluation of a claimant's symptom testimony requires the ALJ to perform a two-step analysis. *Garrison*, 759 F.3d at 1014. First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment that "could reasonably be expected to produce pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2017). If the claimant presents such evidence and absent evidence of malingering, the ALJ may reject the claimant's testimony as to the severity of her symptoms "only by offering specific, clear and convincing reasons for doing so." *Id.*; *Garrison*, 759 F.3d at 1015.

Here, Tyler testified that she has a hard time sitting and walking, uses a walker, and wears a leg brace. (AR. 28, 34.) The ALJ, however, did not include any functional limitations to account for these allegations into his RFC, except for the requirement that Tyler be able to alternate between sitting and standing. (AR. 128–29.) The ALJ's decision to discount this symptom testimony is supported by substantial evidence. For instance, the ALJ pointed out that Tyler has no documented medical need for an assistive device for ambulation, and in fact, the medical evidence consistently noted that Tyler could ambulate normally. (AR. 128 (citing AR. 1008, 1077, 1102).) Similarly, he noted that the record contains no medical evidence supported the medical need for a leg brace for a continuous period of at least twelve months. (AR. 129.) He also cited to evidence that Tyler walks two miles per day. (*Id.* (citing AR. 969).) The ALJ further highlighted reports that Tyler had no shortness of breath or difficulty walking. (*Id.* (citing AR. 1007, 1102, 1318, 1906).) The

ALJ supported his RFC determination with substantial evidence undermining Tyler's testimony of significant difficult standing, walking, and sitting.

In arguing otherwise, Tyler asserts that the ALJ mischaracterized the record and cites to evidence indicating Tyler's impairments. "When evidence reasonably supports either confirming or reversing the ALJ's decision, [the Court] may not substitute [its] judgment for that of the ALJ." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004); *see also Burch v. Barnhart*¸ 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."). It is not the role of the Court to reweigh the evidence. *See Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) ("Generally, questions of credibility and resolution of conflicts in the testimony are functions solely for [the ALJ]." (internal quotation marks and citations omitted)). The ALJ properly supported his RFC determination with substantial evidence showing Tyler is capable of performing light work with the exception that she must be able to alternate between sitting and standing.

**IT IS ORDERED** that the final decision of the Commissioner (AR. 1–14) is **AFFIRMED**. The Clerk of the Court is directed to enter judgment accordingly.

Dated this 31st day of March, 2025.

Douglas L. Rayes
Senior United States District Judge